UNITED STATES v. TWO HUNDRED AND FIFTY KEGS OF NAILS.

(Circuit Court of Appeals, Ninth Circuit. April 2, 1894.)

No. 139.

SHIPPING—COASTING TRADE—VIOLATION OF STATUTE.
The statute prohibiting the transportation of merchandise between ports of the United States in foreign vessels (Rev. St. § 4347) is not violated by shipping goods from New York to Antwerp in one foreign vessel, and afterwards forwarding them by another to a California port, although this was the intention from the outset.

Appeal from the District Court of the United States for the Southern District of California.

This was a libel by the United States seeking the forfeiture of 250 kegs of nails for violation of Rev. St. § 4347. The circuit court overruled a demurrer to the answer, and entered judgment against the United States, from which they have appealed.

George J. Denis, for the United States.

Page & Eells and Andros & Frank, for appellee.

Before McKENNA and GILBERT, Circuit Judges, and HANFORD, District Judge.

GILBERT, Circuit Judge. The United States filed a libel of information for the forfeiture of merchandise claimed to have been unlawfully transported from one port of the United States to another port therein, in vessels owned by subjects of a foreign power, in violation of section 4347 of the Revised Statutes. The owner of the merchandise made a special defense, setting forth the facts constituting the shipment. These facts are that the merchandise was wholly of the produce and manufacture of the United States; that it was shipped at New York in a Belgian vessel, consigned, under regular bills of lading, to a commercial house at Antwerp; that there the merchandise was discharged and landed, and was subsequently shipped on a British vessel, consigned to the owners at the port of Redondo, in California, under bills of lading signed by the master of the British ship, and was carried to Redondo, where it was entered at the customhouse as a manufacture of the United States which had been exported, and was now returned to this country; that the owners produced the certificate of exportation from New York, and presented to the collector at Redondo the evidence required by the regulations of the treasury department that the merchandise was entitled to free entry; that, at the time of the exportation from New York, it was the intention to land the goods at Antwerp, and afterwards forward them by another vessel to Redondo.

The United States demurred to this answer upon the ground that the same did not state facts sufficient, in law, to constitute a defense.

The demurrer was overruled, and decree entered against the libelant, and from that decision this appeal is taken.

The decision of the case upon the appeal must depend upon the proper construction to be given to section 4347 of the Revised Statutes, which reads as follows:

"No merchandise shall be transported, under penalty of forfeiture thereof, from one port of the United States to another port of the United States in a vessel belonging wholly or in part to a subject of any foreign power; but this section shall not be construed to prohibit the sailing of any foreign vessel from one to another port of the United States, provided no merchandise other than that imported in such vessel from some foreign port, and which shall not have been unladen, shall be carried from one port or place to another in the United States."

Is the transportation of merchandise which is described in the answer rendered illegal by the language of the statute? The facts set forth in the defense show that the merchandise in question was not transported directly from one port to another port of the United States, nor was it transported in one foreign vessel. On the other hand, it was carried from a port of the United States to a foreign port in a foreign vessel, and was there reloaded into a second foreign vessel, and thence carried to another port of the United States. The laws of the United States for the protection of shipping, and for the collection of revenue in duties, are intended for the practical use of men engaged in commerce. They are intended to be read in the light of commercial usage, and they are to be interpreted "according to the commercial understanding of the term used." Elliott v. Swartwout, 10 Pet. 137. In interpreting the provisions of such a statute, it is rather the letter of the law, than its spirit, which is to be regarded.

In the plain and ordinary meaning of the words, "to transport goods from one domestic port to another" means to carry goods in one continuous voyage, either directly from the one port to the other, or by the customary voyage pursued in commerce between the ports. It does not mean to carry them in two distinct and separate voyages, or in two distinct vessels. When the merchandise in this case was carried from New York to Antwerp, in an opposite direction from its ultimate destination, and was there discharged, there clearly had been, so far, no violation of the statute. Neither was the subsequent reloading and transportation to Redondo, in itself, a violation of the statute. But it is said that the two voyages are to be regarded as one, and that, viewed in the light of the result, the penalty of the statute has been incurred. But it is not the result that is prohibited by the statute. Were these goods transported from one port in the United States to another port in a vessel belonging in whole or in part to foreign subjects? If they were, the penalty denounced by the statute has been incurred. If they were not, then it makes no difference that the result accomplished was that which is intended to be obviated by the statute.

It was the intention of congress, by this act, to protect American shipping. It was evidently not considered necessary to extend the protection further than the words of the statute indicate. It was

not contemplated that American shipping, in carrying goods between domestic ports, would ever be put to the strain of competition with foreign bottoms by transportation in the circuitous method disclosed in this case. The protection of the statute goes no further than the words, in their plain, obvious sense, indicate. Shippers of merchandise are still left free to transport goods from New York to Redondo by sea in any method they see fit, provided they do not ship them direct from the one port to the other in the prohibited vessel. The protection of the statute was intended to be limited,. and the court has not the right to extend it further than to the transportation precisely described in the terms of the statute.

But it is urged that the facts disclosed in this case amount to a palpable evasion of the statute, and that such is admitted to have been the intention of the parties to the transaction. The purpose the parties had in view can make no difference with the interpretation of the statute. They practiced no concealment or fraud upon the government. Their acts were done openly. They had the statute before them for their guidance. The unlawful act there defined was malum prohibitum only. The statute left them free to ship goods from New York to Redondo in any manner they saw fit, save and except the manner therein prohibited. They followed a method not mentioned in the statute. They had the right to assume that the whole intention of congress had been expressed in the words of the statute.

This view is sustained by the subsequent legislation of congress upon the same subject. Section 4347 is a re-enactment of the act of congress of March 1, 1817, entitled "An act concerning the navigation of the United States." 3 Stat. 351. On July 18, 1866, in consequence of evasions of that law already committed or threatened on the Canadian frontier, congress passed an act which is now embodied in the Revised Statutes as section 3110, and reads as follows:

"If any merchandise shall at any port in the United States on the northern, northeastern or northwestern frontiers thereof, be laden on any vessel belonging in whole or in part to a subject of a foreign country, and shall be taken thence to a foreign port to be reladen and reshipped to any other port in the United States on such frontiers, either by the same or any other vessel, foreign or American, with the intent to evade the provisions relating to the transportation of merchandise from one port of the United States to another port of the United States in a vessel belonging in whole or in part to the subject of a foreign power, the merchandise shall, on its arrival at such last named port, be seized and forfeited to the United States, and the vessel shall pay a tonnage duty of fifty cents per ton on her admeasurement."

This section of the statutes expresses the legislative intention upon the subject of the evasion of the provisions of section 4347. It furnishes conclusive proof that that subject was brought to the attention of congress. Congress thereupon passed the act prohibiting such evasion, but confined the prohibition to transportation between ports within certain defined territorial limits,—the ports of the northern, northeastern, and northwestern frontier. The will of congress with reference to this subject having been expressed by this enactment in regard to certain specified ports, transportation

by this method between all other domestic ports is, by implication, excluded from the prohibition.    But it is contended that the force of this consideration is overcome by the fact that section 3110 imposes a new penalty,—a penalty to be enforced against the ship, in addition to the forfeiture of the cargo; and the argument is that it was the purpose of congress to impose additional restrictions to transportation on the northern frontier by way of the Canadian ports in evasion of section 4347, and to leave other violation of that section to be punished by the penalty therein provided.    We find no warrant for so narrowing the scope of section 3110.    No reason can be suggested why congress should intend one punishment for evasion of the law by transportation via Canadian ports, and another for other transportation evasive of section 4347.    Section 3110 contains the expression of the will of congress concerning the whole subject of the evasion of the previous statute.    It is probable that, at that time, evasion of the law by transportation by way of a European port was not contemplated, or if thought of, was deemed so improbable as to require no prohibition.

But if the terms of section 4347 are admitted to be ambiguous and uncertain, so that the court may be left in doubt concerning their application to the facts presented in this case, then it follows, from settled legal principles of construction of that class of statutes, that the doubt must be resolved against forfeiture.    Sutherland, in his work on Statutory Constructions (section 361), says:

"No case has arisen in which a penalty or forfeiture has been sustained for being within the supposed intention of the statute when not within its terms."

And he quotes from Dwarris on the same subject as follows:

"Judges, therefore, where clauses are obscure, will lean against forfeitures; leaving it to the legislature to correct the evil, if there be any.    With this view, the ship-registry acts, so far as they apply to defeat titles and create forfeitures, are to be construed strictly, as penal, and not liberally, as remedial, laws."

This principle has been universally applied to provisions of the revenue acts.    In Adams v. Bancroft, 3 Sumn. 384, Fed. Cas. No. 44, Story, J., said:

"Laws imposing duties are never construed beyond the natural import of the language, and duties are never imposed upon the citizens upon doubtful interpretations; for every duty imposes a burthen on the public at large, and is construed strictly, and must be made out, in a clear and determinate manner, from the language of the statute."

In the case of U. S. v. Breed, 1 Sumn. 160,[1] it appeared that the duty on white or powdered sugar was 4 cents a pound; and on loaf sugar, 12 cents a pound.    Certain sugars were imported, which were powdered and white; but it was contended that the sugar was in fact loaf sugar, highly refined, and that it had been crushed for the purpose of evading the act.    But the court said:

"To constitute an evasion of a revenue act which shall be deemed, in point of law, a fraudulent evasion, it is not sufficient that the party introduces another article, perfectly lawful, which defeats the policy contemplated by the

[1] Fed. Cas. No. 14,638.

act. There must be substantially an introduction of the very thing taxed, under a false denomination or cover, with the intent to evade or defraud the act. * * * It is a misfortune incident to all laws that they are necessarily imperfect, and, from human infirmity, fall short of all the intended objects. But in all such cases it is the business of legislation, and not of courts of justice, to correct the evil."

The principles announced in that case guided the decision of the court in the case of Merritt v. Welsh, 104 U. S. 694, in which the court said:

"Great stress is laid on the charge that sugars are manufactured in dark colors on purpose to evade our duties. Suppose this is true. Has not a manufacturer a right to make his goods as he pleases? If they are less marketable, it is his loss. If they are not less marketable, who has a right to complain? If the duties are affected, there is a plain remedy. Congress can always adopt such laws and regulations as it may deem expedient for protecting the interests of the government."

It may be added that, since the commencement of the present suit congress has amended section 4347, and has made its interdiction extend to transportation such as was had in this case, by inserting in that section the following words:

"And the transportation of merchandise in any such vessel or vessels from one port of the United States to another port of the United States via any foreign port shall be deemed a violation of the foregoing provision." 27 Stat. 455.

It is the judgment of the court that the decree be affirmed.